# CASES DETERMINED

AT THE

## *August Term, 1884.*

---

### CUMMINGS vs. THE NATIONAL FURNACE COMPANY.

*February 23 — September 23, 1884.*

NEGLIGENCE: SPECIAL VERDICT: INSTRUCTIONS: DAMAGES. *(1, 2) Presumption of negligence from accident itself: Specific act or omission not shown. (3) Special verdict as to contributory negligence. (4) Trespassers or intruders. (5) Negligence of plaintiff not contributory. (6) Definition of ordinary care: exception: immaterial error. (7) Excessive damages.*

1. An accident may be of such a character as to show, in a case where the machinery is found perfect, that there was negligence on the part of those handling it.

2. Where the mere proof of the accident creates a presumption of negligence, the plaintiff is not bound to show a specific act of carelessness, and the defendant is not entitled to have a question submitted for a special verdict requiring the jury to find such an act.

3. If the question of plaintiff's contributory negligence is submitted to the jury for a special verdict, and their attention is called by instructions to the evidence of the facts tending to establish such negligence, it is not error to refuse to submit separate questions relating to each of those subordinate facts.

4. The captain and crew of a vessel have a right to be upon the deck, while a purchaser of the cargo is unloading the same, and to perform any necessary work thereon, not interfering with such unloading. While so engaged they cannot, so far as the care required of the purchaser is concerned, be deemed mere intruders or trespassers.

5. Negligence of the plaintiff at the time of an accident, but in no way contributing thereto, will not defeat a recovery.

6. An instruction to the jury in effect defined ordinary care to be such care as a person of ordinary prudence would exercise in his business when he was surrounded by his sons as his assistants. Such instruction not being deemed to have prejudiced the defendant, and the exception thereto being to the whole instruction and not to the part specially objected to on appeal, the error, if any, does not work a reversal of the judgment.

7. Damages assessed at $8,000, for an injury which rendered a healthy, vigorous, and strong man, diseased, feeble, and helpless for life, are *held* not excessive.

APPEAL from the Circuit Court for *Brown* County.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the servants of the defendant company. The answer denies negligence on the part of the defendant and alleges negligence of the plaintiff as the cause of the injury. The facts attending the accident will appear from the opinion.

The defendant requested the court to submit the following questions to the jury for a special verdict: (1) At the time of the happening of the accident to the plaintiff, was the plaintiff in an intoxicated condition? (2) Was it dangerous to stand under the bucket when it was being hoisted? (3) Did the plaintiff have notice not to stand under the bucket when it was being hoisted? (4) Was the plaintiff ordered away by Johnson and by Gerkie (employees of the defendant) before the accident? (5) Did the witness Gerkie call on the plaintiff when the bucket upset to get out of the way of the falling ore? (6) Was there a calling out to get out of the way given before the bucket was hoisted? (7) Could the plaintiff have got out of the way of the iron falling from the bucket if he had used diligence, and at once acted on the caution of the witness Gerkie? (8) Was there any fault, carelessness, or neglect on the part of the defendant or its employees that caused the bucket to upset? (9) If the jury answer "no" to the last above question, then the next question need not be answered; but if they answer

Cummings vs. The National Furnace Co.

"yes" to the foregoing question, then the jury will answer the following: State in what way or manner the defendant or its servants were at fault, carelessness or negligence in the use of the bucket. (10) Was there any defect or fault in the construction or use of the machinery or bucket used to hoist the iron ore? If so, then state what that fault or defect was. (11) Was the plaintiff injured through any fault, neglect, or unlawful act of the defendant? (12) If the jury answer "yes" to the last question, then state what that fault or defect was. (13) Did the defendant use ordinary care in the use of the bucket and machinery to hoist the iron ore from the vessel "Experiment"? (14) Was the plaintiff, at the time of the happening of the accident complained of, in an intoxicated state, and did his being in such state make him reckless of danger, and did that contribute to his receiving the injury complained of?

The court refused to submit such questions, but submitted certain questions proposed by the plaintiff, which, with the answers thereto, were as follows:

1. Was the plaintiff, on or about the time mentioned in the complaint, injured in consequence of the premature dumping of a bucket full of iron ore, being lifted from the vessel on which the plaintiff was? *A.* Yes.

2. Was such dumping caused by any defect in, or want of repair of, the bucket? *A.* No.

3. Was such dumping caused by the negligence of the servants or workmen of the defendant who operated such bucket. *A.* Yes.

4. Was the plaintiff, at the time he was so injured, attending to his duties as directed by the master of the vessel. *A.* Yes.

5. Was the plaintiff guilty of negligence on his part, which contributed to the injury? *A.* No.

6. Do you find for the plaintiff or for the defendant, and if for the plaintiff at what sum do you assess his damages? *A.* We find for the plaintiff, $8,000.

In submitting the third question the court gave the following instruction, the defendant subsequently filing a separate exception to each part thereof here enclosed within brackets:

"[If from a fair preponderance of the evidence, you believe that the dumping of the bucket was caused by such neglect on the part of the servants or workmen of the defendant as is termed in law ordinary neglect, either by using the bucket when there was a defect in its construction, or in the construction of the spring and catch by which it was fastened when it was in use, or by want of repair of the bucket, or of the spring or catch, or in the way and manner in which they used and handled the bucket on the occasion, you will answer 'yes' to the third question.] But if you are not by the evidence, or by a preponderance of it, satisfied that the dumping of the bucket was caused by such neglect of the servants and workmen of the defendant, you will answer 'no' to this question, No. 3. [Ordinary neglect, in a case like this, is the neglect to exercise that care a person of ordinary prudence or the ordinary run of men would have taken with their own property under just such circumstances as the tub was at the time complained of, if the person using it was surrounded and assisted by his own sons in the use of the tub.]"

The court refused to give the following instructions asked by the defendant:

"It is the law in this state that a slight want of ordinary care on the part of a person complaining of receiving an injury by reason of the negligence of another will defeat the recovery of damages for such alleged injuries although the negligence of the person or persons complained of may have been gross, provided the acts complained of were not wilful or malicious.

"There is no claim in this case that there was any malicious or wilful negligence on the part of the defendants."

A motion for a new trial was denied, and from the judgment entered upon the special verdict, in favor of the plaintiff, the defendant appealed.

For the appellant there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Hudd.* They contended, *inter alia*, that the evidence failed to show negligence on the part of the defendant. Negligence is never presumed. *Steffen v. C. & N. W. R'y Co.*, 46 Wis., 259. The defendant was. in the lawful exercise of its business and owed no special duty to the plaintiff. *Converse v. Walker*, 30 Hun, 597; *Nicholson v. Erie R'y Co.*, 41 N. Y., 529. The mere fact of the injury or accident was not sufficient to establish plaintiff's case, without proof, in addition, of a want of ordinary care on the part of defendant's employees. *Chappell v. Town of Oregon*, 36 Wis., 145; *Wood v. C., M. & St. P. R'y Co.*, 51 id., 196; *Payne v. 42d St. R. R. Co.*, 40 N. Y. Super. Ct., 8; *Morrison v. P. & C. Const. Co.*, 44 Wis., 405; *Stevenson v. C. & A. R. Co.*, 18 Fed. Rep., 493. The defendant had an absolute right to special findings in relation to all the material facts. *Davis v. Town of Farmington*, 42 Wis., 425; *Haas v. C. & N. W. R'y Co.*, 41 id., 44; *Ward v. Busack*, 46 id., 411; *Selleck v. Griswold*, 49 id., 48. As to his right to an answer upon the question of plaintiff's intoxication (questions 1 and 14), see 42 N. Y. Super. Ct., 456; 3 Hun, 708; 11 id., 543; 35 Wis., 118. The answer to the third question submitted was a mere conclusion of law.

For the respondent there was a brief by *Fish & Dodge,*. attorneys, and *Jenkins, Winkler & Smith*, of counsel, and the cause was argued orally by *Mr. Fish.*

The following opinion was filed March 18, 1884:

Taylor, J. The facts upon which the action is based are substantially the following: The plaintiff was employed as a seaman upon the sailing vessel " Experiment," and he was also a diver. The " Experiment" had been engaged in col-

lecting iron ore which had fallen into the water from vessels at docks while unloading, or from vessels in distress, or which had been wrecked.    Shortly before the accident occurred which caused the injury to the respondent, the "Experiment," having on board between fifty and seventy-five tons of iron ore, put into the harbor of Green Bay to sell her cargo, and did sell the same to the defendant company, and the vessel was placed at the company's dock to be unloaded.

By the contract of sale the company was to remove the ore from the deck and hold of the vessel, using its own machinery and its own men for that purpose.    The captain of the "Experiment," and his men on board of the vessel, were to have nothing to do with the unloading in any way, except to bring the vessel along-side of the appellant's dock. The vessel was properly placed at the company's dock by the captain of the vessel, and, after notice to the captain that they were ready to begin unloading the ore, and after the captain had announced that he was ready to have them begin, the employees of the company entered upon the vessel, and commenced the work of unloading.    For the purpose of unloading the ore the company used a swinging crane standing on the dock, with an arm extending over the vessel, which carried a large bucket, into which the ore was filled, and, when filled, the bucket was hoisted onto the dock by a chain or rope passing over pulleys attached to the crane, the power which hoisted the bucket being on the company's dock.    This bucket was large and heavy, about five feet high, and, when loaded, the load and bucket would weigh over a ton.    The bail of the bucket, to which the rope or chain used for hoisting it was fastened, was attached to the outside of the bucket, some distance below the center, so that when left unfastened the bucket would tip, and so unload itself.    In order to prevent the bucket from tipping or dumping while the same was being hoisted and carried to

the place where it was to be unloaded, there was a spring fastened to the outside of the bail on one side, at the upper end of which spring was firmly attached a bolt of iron long enough to pass through a hole in the side of the bail near the top of the bucket, and through a hole in the side of the bucket, and, when the bail was held upright, the hole through the bail and the side of the bucket would be opposite to each other, and the power of the spring would force the bolt or pin at the end of the spring, through the bail and side of the bucket, and hold it firmly in its upright position. When the bucket was in use, a chain or rope was attached to the spring, so that when the bucket arrived at the place for unloading, some person having the management of this rope or chain could, by a sudden pull or jerk, withdraw the bolt from the side of the bucket, and the bucket would then tip of itself, and discharge its load.

After the employees of the defendant had removed two or three buckets of ore from the vessel, and while the bucket was being raised with another load to be carried upon the dock, and when it had been elevated ten or twelve feet above the deck of the vessel, from some cause the bail of the bucket became loosened and it tipped, pouring its load of ore upon the deck of the vessel, and a part of the ore so poured from the bucket struck the plaintiff upon his back, shoulders, and legs, and caused the injury complained of.

At the time the plaintiff received his injury he was standing in a stooping posture at the capstan of the vessel, putting a canvass around it to protect it from injury while the ore was being unloaded. He was at the time doing such work by order of the captain of the vessel. The place where he was standing at work was between six and seven feet from the place where the bucket was standing when it was filled, immediately before the accident happened, and about the same distance on one side of the bucket when it

was being hoisted, immediately before it tipped and discharged its load upon the deck of the vessel and injured him.

There was no direct evidence which showed conclusively how the bail of the bucket became loosened and so tipped and poured its contents on the deck. The evidence tended to show that the bucket, bail, and spring were in good order, and the jury found as a fact on the trial that there was no defect in the machinery. The person who held the rope and whose duty it was to pull the spring so as to permit the bucket to tip and unload itself was not produced as a witness on the trial. The evidence tended to show that the accident might have happened if a piece of ore or other substance had got between the spring and bail so as to prevent the spring from forcing the pin or bolt far enough into the side of the bucket, or it might have happened if the man holding the rope attached to the spring had accidentally or carelessly pulled upon it or suffered the rope to get fastened in any way so as to draw upon the spring while the bucket was ascending.

When the plaintiff's evidence was all in, and he rested, the defendant moved for a nonsuit on the ground that there was no proof of negligence on the part of the defendant, its servants, or employees, and on the ground that the evidence showed that the plaintiff was guilty of negligence which contributed to the injury. This motion was overruled, and defendant excepted. After all the evidence was in, the motion for nonsuit was renewed upon the same grounds, and denied, and exception taken. Upon the request of the defendant the jury rendered a special verdict.

Upon the hearing of this appeal, the learned counsel for the appellant has made a very earnest and able argument in support of his assignment of error, that, upon the whole evidence, the court should have nonsuited the plaintiff upon both the grounds mentioned. He claims that there is no evidence tending to show negligence on the part of the de-

Cummings vs. The National Furnace Co.

fendant or its employees. The argument presented is that, as the jury have found that the bucket and machinery were perfect and in good repair, and there being no evidence showing any specific act of negligence on the part of the defendant's servants or employees, which caused the accident, neither the court nor jury had the right to infer, from the nature of the accident itself, that there was any negligence on their part. We think the argument is unsound. Admitting that the evidence shows, as the jury have found, that the bucket, bail, and spring which held the bail so as to prevent its tipping, were all in perfect order, and as the proof shows that if they were all in perfect order and properly handled the bucket would not tip, it would seem to follow as a natural consequence that there must have been some neglect on the part of those handling the same, either in permitting some object to get between the spring and bail, which prevented the spring from forcing the pin through the bucket sufficiently far to hold, or that some object had been forced into the hole in the bucket so as to prevent the spring from forcing the pin far enough into the bucket to hold it safely, or that the party in charge of the rope attached to the spring had incautiously pulled too hard upon the rope while the bucket was rising, or that he permitted the rope to get entangled with some object on the deck of the vessel so as to have withdrawn the pin from the side of the bucket. These appear to be the only reasonable ways for accounting for the accident, if the machinery was in fact in perfect working order; and if the accident happened in any of the ways above suggested, it would certainly be evidence tending to show negligence on the part of those in charge of the machinery. The accident itself was of such a character as to raise a presumption of negligence either in the character of the machinery used or in the care with which it was handled; and as the jury have found the fault was not in the machinery, it follows that it must have

been in the handling; otherwise there is no rational cause shown for its happening.

This rule, that an accident may be of such a nature as to raise a presumption of negligence, is fully sustained by the following authorities cited by the learned counsel for the respondent in their brief: *Mullen v. St. John*, 57 N. Y., 567; *Lyons v. Rosenthal*, 11 Hun., 46; *Kearny v. L., B. & S. C. R'y Co.*, L. R. 5 Q. B., 411, and L. R. 6 Q. B., 759; *Scott v. L. & St. K. Docks Co.*, 3 Hurl. & C., 596; *Byrne v. Boadle*, 2 Hurl. & C., 722; *Brigges v. Olson*, 4 Hurl. & C., 403; *Edgerton v. N. Y. & H. R. R. Co.*, 39 N. Y., 227; *Kirst v. M., L. S. & W. R'y Co.*, 46 Wis., 489. In *Scott v. L. & St. K. Docks Co.*, *supra*, the court lays down the following rule: "In an action for personal injury caused by the alleged negligence of the defendant, the plaintiff must adduce reasonable evidence of negligence to warrant the judge in leaving the case to the jury; but when the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." The rule laid down in this case is fully sustained by the cases above cited, and it was cited and approved by this court in the case of *Kirst v. M., L. S. & W. R'y Co.*, 46 Wis., 489.

The evidence in this case given by the defendant makes a stronger case for the plaintiff than in the cases cited. It shows almost conclusively that the accident would not have happened if those handling the bucket had used ordinary care in seeing that the bail of the bucket was securely fastened before the bucket was hoisted, and there had been no carelessness on the part of the man who handled the rope attached to the spring. The affirmative evidence on the part of the defendant, showing care in these respects, is not

of the most satisfactory kind. The fact that the man who handled the rope, and whose duty it was to see to these matters, was not put on the stand by the defendant is not explained. It may be that there was a sufficient reason for not producing him, in no way connected with his knowledge of the transaction, but it would seem that if there was any such reason for his absence at the trial the defendant ought to have shown it. In the light of the authorities above cited, it is very clear to us that, upon the whole evidence, the question of negligence on the part of the defendant was properly submitted to the jury.

It is also urged that there was no negligence on the part of the defendant or its servants, because they owed no duty towards the plaintiff. It is suggested that, after the defendant's servants commenced unloading the ore, the plaintiff had no right to be upon the deck of the vessel for any purpose, and that for the purposes of this trial he should be deemed a mere intruder or trespasser. We see nothing in the evidence which will sustain that position. The captain and the crew of the vessel had the undoubted right to be on board, notwithstanding the defendant was unloading the ore, and perform any necessary work on said vessel, while the defendant was unloading, which did not interfere with the work of unloading.

It is further urged by the learned counsel for the defendant that the evidence showed conclusively that the negligence of the plaintiff contributed to his injury, and for that reason a nonsuit should have been ordered. Without giving any statement of the evidence, we have no hesitation in saying that it does not conclusively establish any negligence on the part of the plaintiff which contributed to the injury, and that question was also properly submitted to the jury.

It is also contended on the part of the appellant that the court erred in refusing to submit certain questions requested by the defendant as a part of their special verdict. The

defendant proposed fourteen questions, which it requested should be submitted, and none of them were submitted in the exact language requested. The first, second, third, fourth, fifth, sixth, seventh, and fourteenth were not submitted at all. These questions, which the court refused to put to the jury as a part of their special verdict, were all propounded with a view of obtaining an answer from the jury as to whether certain allegations made by the defendant on the trial, and which he attempted to prove, were in fact proved, and they all go to the question of contributory negligence on the part of the plaintiff. We are of the opinion that the court properly refused to submit them, for the reason that if they had all been answered favorably to the defendant, yet, as a question of law, the plaintiff's contributory negligence would not have been established, and that question would still have been left for the jury to pass upon as a question of fact upon all the other facts found. If there were one or more facts litigated on the trial which, if found favorably to the defendant, would necessarily entitle him to a judgment in his favor, it would be undoubtedly proper for the judge to submit such facts for the jury to pass upon in their special verdict; but when such facts only tend to prove the main fact, viz., the contributory negligence of the plaintiff, there is certainly no error in refusing to submit them to the jury for separate answers. The defendant will have all the advantage he is entitled to on the trial by calling the attention of the court to the facts upon which he relies to establish the plaintiff's negligence, and requesting him to instruct the jury as to the bearing they may have if found in favor of the defendant upon the main question. In looking into the instructions of the court given to the jury, in this case, it will be seen that the learned judge called their attention to the matters which the defendant alleges tended to prove the plaintiff's contributory negligence.

The other questions asked by the defendant were substan-

Cummings vs. The National Furnace Co.

tially submitted, except the ninth. This question reads as follows: "If the jury answer 'yes' [to the question whether there was negligence on the part of the defendant or its employees], state in what way or manner the defendant or its servants were at fault, carelessness or negligence in the use of the bucket." If a question of this kind is permissible in any case, it is clear that it was not permissible in this. The particular act of carelessness, if there was any, was not made clear by the evidence. Having, as the cases above cited show, proved the fact of the accident, a presumption of negligence was established against the defendant, and the plaintiff was not called upon to show what the particular negligence was. On the other hand, the defendant was called upon to explain and show that it did not occur from any fault on its part, or on the part of its employees. It did show, to the satisfaction of the jury, that it did not occur from any defect in the machinery, but failed to show conclusively that it did not happen from negligence on the part of those handling the machinery. The *prima facie* case made by the plaintiff was not absolutely overcome upon this part of the defense, and as that carelessness might have arisen, even under the showing of the defendant, in various ways, he was not entitled to have the jury say in what particular way it occurred. That fact was left in much doubt, while the fact that there was negligence, resulting from some cause, was sufficiently apparent. Under the authorities above cited, if the defendant had submitted the case to the jury upon the plaintiff's evidence alone, the jury would have been justified in finding that there was negligence on the part of the defendant or its employees, either in using defective machinery or in the use of the machinery; yet there would have been no evidence tending to show what the specific negligence was which caused the accident. As the authorities clearly show that the plaintiff may recover upon proofs which do not point out the specific

act of negligence which caused the injury, it is clear that in such case, at least, the defendant is not entitled to have the jury find the specific act of negligence which caused the injury.

It is also alleged as error that the court refused to instruct the jury, as requested by the defendants, on the subject of the plaintiff's negligence. The instruction asked upon this point was properly refused, because it requested the court to instruct the jury " that if there was any negligence on the part of the plaintiff at the time, then he could not recover." Negligence on the part of the plaintiff at the time, which did not in any way contribute to the injury, would not defeat his right to recover. The refusal to give the other instruction asked could not have injured the defendant, as it was not claimed by the plaintiff that there was any malicious or wilful negligence on the part of the defendant or its employees. No exemplary or punitive damages were claimed for that cause, and the instructions given on the subject of damages clearly limited the jury in their assessment to such damages as were strictly compensatory.

The defendant excepted to that part of the instruction of the learned circuit judge in which he defined what he meant by " ordinary neglect," a term which the learned judge had before used in instructing the jury. He defined the phrase as follows: " Ordinary neglect, in a case like this, is the neglect to exercise that care a person of ordinary prudence, or the ordinary run of men, would have taken with their own property under just such circumstances as the tub was at the time complained of, if the person using it was surrounded and assisted by his own sons in the use of the tub." There is certainly no objection to this definition of ordinary negligence, unless exceptions be taken to the last part of the definition. We have very grave doubts as to the propriety of making a test of what is ordinary care by saying that it is such care as a person of ordinary prudence would use in

his business when he was surrounded by his sons as assistants. We think, however, that, under the evidence in this case, the defendant was not prejudiced by that part of the instruction. And as the defendant excepted to the instruction as a whole, and not to that part which is specially objected to on this appeal, we do not think the judgment should be reversed for that cause.

We see no other substantial objection to the instructions of the court.

It is further urged that the verdict is excessive. Although the sum allowed the plaintiff by the jury is large, we see no good reason for holding it excessive. If the plaintiff's evidence is to be credited, the accident has rendered a healthy, vigorous, and strong man, diseased, feeble, and helpless for life. Under such evidence this court cannot say that a verdict for $8,000 is excessive.

*By the Court.*— The judgment of the circuit court is affirmed.

Upon a motion for a rehearing there were briefs by *Hudd & Wigman*, attorneys, and *D. S. Wegg*, of counsel, for the appellant, and a brief by *Fish & Dodge*, attorneys, and *Jenkins, Winkler & Smith*, of counsel, for the respondent.

The following opinion was filed September 23, 1884:.

TAYLOR, J. If the court, on the hearing of this case, was led into an error of fact in regard to what the evidence established in regard to the way the bucket in which the ore was hoisted from the vessel was handled, we can only excuse ourselves by saying that the court was brought into the error mainly by the statement of fact made by the learned counsel for the appellant in his printed brief. On the third and fourth pages of that brief we find the following statement: " The buckets are lowered and hoisted by machinery, and when filled and in process of being hoisted, the bucket

is held in an upright position by springs, to which *there is a cord or wire attached*, that, when the bucket reaches its desired elevation or point of deposit, *is pulled and the bucket turns over*, or, as the furnace men phrase it, ' dumps,' and the contents fall as desired." The italics are ours.

This statement of facts was, so far as we now remember, taken as true upon the argument by the counsel on both sides. Certainly there was no statement made by the learned counsel which was in conflict with it. And when the counsel for the respondent made use of the statement of fact, in order to show how the accident might have occurred, no attempt was made by the learned counsel for the appellant to correct the opposite counsel, or to call the attention of the court to what is now claimed as a gross mistake of fact made by appellant's counsel in their printed brief.

As there was nothing in the evidence which is necessarily in conflict with the statement made by the learned counsel for the appellant, and as there was evidence showing that sometimes there was a trip-rope or cord attached to the spring, and, at other times, the spring was drawn out by the hand of some person standing at the place where the bucket was to be discharged, this court had the right to adopt the statement of the appellant's counsel who was at the trial in the court below and was supposed to know what the real truth as to that matter was. There certainly is no affirmative evidence in the record that no " cord or wire " was attached to the spring of the bucket in question at the time the accident occurred. This court cannot, therefore, be rightfully charged with having made a mistake as to what the facts in the case were.

But since our attention has been called to the facts relating to the handling of the bucket more particularly, and to the evidence upon that subject, and the learned counsel having withdrawn his statement made in his former brief, we must admit that there is no satisfactory evidence showing

that any cord or wire was attached to the spring of the bucket then in use; and from the further fact that the evidence tends to show that the bucket was unloaded in a car standing upon the dock, it is reasonable to presume that some person standing near the place of unloading the bucket would pull the spring, and not some person standing on the deck of the vessel. For the purposes of this motion for a rehearing, we shall therefore take it for granted that such was the fact.

Admitting that fact, we are still of the opinion that there was evidence to go to the jury upon the question of the negligence of the servants of the defendant in handling the bucket at the time the accident happened. If, as is claimed by the learned counsel for the appellant, the machinery was all in good repair, then we think the evidence strongly tends to prove that the bucket would not have tipped and emptied itself as it did, unless there was some mismanagement on the part of those in charge of it. All concur in stating that if the spring was of the proper strength and the pin was forced in place before the bucket was hoisted from the deck, the bucket would not tip and unload itself, unless it came in contact with some obstacle with great force as it was hoisted. In this case the evidence shows that it did not come in contact with anything, and that, while suspended with only its own weight, the bolt or pin failed to keep the bucket in position and without any apparent cause it tipped and unloaded itself on the deck of the vessel. As was shown in the former opinion the accident was itself evidence of carelessness in handling the bucket. If it be admitted that the machinery was all perfect, how does the evidence on the part of the appellant conclusively disprove this *prima facie* proof of negligence on the part of its agents and servants, so as to make it the duty of the court to decide that, as a question of law, there is no proof of negligence in the case?

It is said the evidence conclusively shows that the pin

was properly fixed in its place in the side of the bucket before the machinery was put in motion to hoist the bucket. We do not so understand the evidence. The only witness who undertakes to speak with any degree of definiteness on that subject is August Gerkie, and he speaks of it in his cross-examination. He says: "The spring was all right when the bucket started. It was in its proper place; otherwise, I will tell you, if that spring is not in the proper place in the bucket, as soon as the machinery starts it will tip before it hoists. The jerk of the rope will tip it over. The spring was in the hole at the time the bucket started, and afterwards got out; that is my idea. It got out after the bucket got up." Taking this entire statement, and it does not show for a certainty that the witness examined the spring and pin before the machinery was started, to see if the pin was properly adjusted; but he merely comes to the conclusion that it must have been, because if it had not been in its place the bucket would have tipped before it was hoisted from the deck. It cannot be said that his deduction must necessarily follow from the fact that the bucket did not tip before it was hoisted. If there had been some obstruction in the way of the spring or pin, still it might have been partially in its place, so as to prevent the tipping of the bucket when it was first started, and yet not have been so securely fixed in its place as to carry the bucket in safety to its destination. This evidence is not of such a character as to justify the court in saying that the presumption of negligence arising from the accident was absolutely overcome. That was clearly a question for the jury. The accident did happen, and it did happen because the spring and pin failed to do the work they were intended to do, and which all the evidence strongly tends to show they would have done had they been in their proper places when the machinery was put in motion. It leaves the case as it was before this evidence was given. It does not show as a matter of fact that

the spring and pin were properly adjusted before the machinery was put in motion. The witness does not say it was, except in mere formal words, but he clearly explains why he used the form of statement he did by his explanation given evidently as a reason for his statement of the fact, and he does not pretend to say that he in fact examined the spring and pin to see if they were properly adjusted before the hoisting commenced.

The case was not as strong for the defendant as the case of *Brusberg v. M., L. S. & W. R'y Co.*, 55 Wis., 106. In that case the plaintiff proved that his barn was set on fire by sparks and cinders emitted from a passing engine of the company. The officers and servants of the company proved by witnesses who spoke positively that the engine was in good order, used a proper spark-arrester, and in addition that the engine was properly manned and properly handled at the time, and that when so handled no sparks or cinders, such as were claimed to have been emitted from the smokestack, by the witnesses for the plaintiff, could be emitted therefrom. Yet this court said the circuit court was right in refusing to nonsuit the plaintiff, and sustained a verdict in his favor. So, in the case at bar, the evidence tends to show if there had been no negligence in the management of the bucket the accident would not have happened. The evidence shows the accident did happen, and there is no positive proof on the part of those in charge at the time, which disproves the presumption of negligence. The question was one, therefore, for the jury and not the court.

All the other questions discussed by the learned counsel for the appellant were fully discussed upon the former hearing of this case, and were so carefully considered by this court that we are satisfied with the decision as made, and do not think that any further discussion would be profitable.

*By the Court.*— The motion for a rehearing is denied, with $25 costs.