LILLIAS SMITH, Administratrix of the Estate of HARRISON B. SMITH, Appellant, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

**Motion to Direct Verdict.**  A motion by a defendant for the direction of a verdict, is in the nature of a demurrer to plaintiff's evidence, and will be granted only when, viewed in its most favorable light, such evidence fails to support the allegations of the complaint.

**Negligence:  COURT AND JURY:**  *Railroads.*  Evidence that a switchman stepping between a standing car and cars that were being slowly backed, made a coupling, and then, starting to go out from between the cars, from some cause fell, or was thrown, so that one or two wheels of the car ran over one of his legs, the train, however, being stopped by the engineer immediately on striking the standing car, so that the cars only moved about three feet after the switchman fell, is not sufficient to establish any negligence on part of the railroad.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

TUESDAY, OCTOBER 27, 1896.

ACTION at law to recover damages on the ground that certain alleged acts of negligence on the part of the defendant's employes caused the death of plaintiff's intestate, without fault on his part, while in the employment of the defendant as a switchman, and in the line of his duties.  The defendant answered, denying generally, and at the conclusion of the evidence, on behalf of the plaintiff, the court, on motion of the defendant, instructed the jury to return a verdict for the defendant, and rendered judgment accordingly, from which the plaintiff appeals.—*Affirmed.*

*L. Kinkead* and *W. C. Kinkead* for appellant.

*Cummins & Wright* for appellee.

GIVEN, J.—I. The question involved in defendant's motion for a verdict is whether, under the evidence, the court erred in not submitting the case to the jury. There being a dispute as to the correctness of the abstracts, we have been required to examine the transcript of the evidence on file, from which we find the following to be the material facts in the case: The deceased was an experienced railroad man, having been employed in various positions in the operation of engines and cars for many years. At the time of this accident he was in the employment of the defendant as one of a switching crew, working in defendant's yards at Des Moines. The crew consisted of an engineer and fireman in charge of the engine; two switchmen, of which deceased was one; and a foreman in immediate charge of the work of the crew. It was the duty of this foreman and crew to move cars about the yard to such points as directed by the yard master. Near six o'clock on the evening of November 24, 1892, said crew was engaged in putting some loaded coal cars in place to be unloaded on a side track running east and west, the grade of which was practically level. It being in the dusk of the evening, the foreman and deceased each carried a lighted lantern. The engine, with four cars attached west of it, was backed in from the east onto said side track, the purpose being to back up to a loaded car of coal standing on said track, and to push it and the other cars further west to certain coal sheds. The west of the moving cars, and also the standing car, were what is known as foreign, or Pennsylvania cars, each having the double deadwood with a drawbar coupling between,—a fact that was plainly obvious, and known

to the foreman and to the deceased. The foreman and the deceased were on the ground, north of said side track, and walking west with the moving cars, near the west end thereof. When within a car's length of the standing car, a· signal to stop was given, which was obeyed, and the engine and cars brought to a standstill. Thereupon the foreman and the deceased each gave a signal to back up slowly, which was obeyed, and the engine and four cars were moved west to the standing car at "not to exceed two miles an hour." After the signal to back up slowly was given, the deceased stepped in onto the track at the west end of the moving cars, for the purpose of coupling them to the standing car, and continued to walk west with the moving car until the standing car was reached, whereupon he made the coupling, and then started to go out north from between the cars. From some cause that does not appear he fell, or was thrown down so that one or more of the car wheels ran over one of his legs and injured him so that he died of the injury the next day. There is nothing whatever to show that his fall was caused by any fault upon the part of his co-employes in the movement of the train. The foreman was near by watching the movements of the deceased, and gave a signal to stop when the coupling was made, which signal was obeyed so that the cars only moved about three feet after the deceased fell. It is alleged and argued that the men in charge of the engine were negligent in not stopping the train the moment they felt it strike the standing car. The evidence shows that they did so, and that the train only moved about three feet. It is immaterial whether this stop was made in obedience to the foreman's stop signal or because of striking the standing car. The cars were stopped, and, therefore, there was no negligence in this respect. Appellant's counsel contend,

and correctly so, that this motion for verdict is in the nature of a demurrer to the evidence, and that in considering it the court must accept as established, whatever the evidence tends to prove. We have examined the evidence with care, and, applying this rule, fail to discover in it anything that tends to establish negligence upon the part of the defendant or its employes. We think that but one conclusion can be drawn from it, and that is, that the accident occurred because deceased made a mistep that caused him to fall, when coming from between the cars. We think there was no error in sustaining defendant's motion for a verdict.

II. Appellant complains of certain rulings and statements of the court in taking the testimony. Most of these complaints relate to testimony as to the meaning of a "slow signal," and whether it was the duty of the engineer to stop the train without signal on striking the standing car. The meaning of a "slow signal" was fully explained by several witnesses. Whether it was the duty of the engineer to stop the train before feeling the impact with the standing car is immaterial under this evidence, as it appears without conflict that he did stop the train immediately upon striking the standing car, either because of that fact, or in obedience to the stop signal from the foreman. He did stop the train; therefore it is immaterial as to whether, under the custom, he might have continued the movement. It is complained that the court assumed that the track was level. The evidence shows that it was so nearly level as that the grade in no wise affected the movement or stopping of the cars, nor contributed to the accident. We have examined these several complaints with care, and find no error in the rulings, or statements, of the court in taking the testimony, that was prejudicial to the

appellant.   Our conclusion upon the record before us is that the judgment of the district court should be AFFIRMED.