John Bolsem, Appellant, v. Iowa Central Railway Company.

**Master and servant:** ASSUMPTION OF RISK. Where the danger in performing a service in the manner adopted by an employee is obvious to him he assumes the risk; as where an experienced bridge carpenter and assistant foreman was directed to repair a water crane, which required that the standpipe be raised so that the ball bearings might be adjusted, and in doing so selected his own tools, crowbar and small fulcrum, with which they raised the pipe, and without attempting to otherwise support it he inserted his hand to adjust the bearings when the bar slipped and the pipe fell causing his injury, he cannot say that defendant was negligent in failing to warn him of the danger.

*Appeal from Mahaska District Court.*—Hon. Byron W. Preston, Judge.

Thursday, October 29, 1908.

ACTION to recover damages for personal injuries received by plaintiff while in defendant's employ, alleged to have been due to the negligence of the defendant. At the close of the evidence the court sustained a motion for a verdict in defendant's favor, and from the judgment rendered on such directed verdict the plaintiff appeals. *Affirmed.*

*H. W. Gleason* and *W. R. Nelson,* for appellant.

*George W. Seevers* and *John O. Malcolm,* for appellee.

McClain, J.—For about three years prior to the date of the accident resulting in the injury complained of, plaintiff had been in the employ of defendant as a bridge carpenter, and in that employment had had experience in the work of the bridge gang, which included, not only bridge work proper, but repairing and keeping in order stockyards, water tanks, roundhouses, and water cranes. On the 13th of February, 1905, the water crane at defendant's station at Oskaloosa was found to be out of order, and one Reed, the foreman of the bridge gang, directed three of the gang, plaintiff, Hunt, and Pilgrim, who had been engaged in cleaning out water cars in another part of the yards, to put it in repair. These men, with the foreman, investigated the difficulty with the crane, and found that the standpipe, connecting about five feet underground with the water main, and arranged so as to revolve as required on ball bearings inside of a collar which extended above the surface of the ground and was easily accessible, had been forced upward to a slight extent by the pressure of the water, so that the balls on which it should rest had fallen from their spindles on the inside of the collar to the bottom of the pit, and the crane could not be turned. This pit was about five feet long and four feet wide, covered with planking. The standpipe was about eight inches in diameter, of cast iron, from a half inch to an inch in thickness, and ten or twelve feet in height above the ground, and weighed about seven hundred pounds.

Under the direction of the foreman Hunt opened the pit, shut off the water which had been running, and, after the water in the pit had drained away, secured from the bottom the balls which had fallen from their spindles or

sprockets on the inside of the collar. He also tried lifting up the standpipe by means of his crowbar, placing the end under a lug standing out an inch and a quarter from the surface of the pipe and near its lower end, and running around it for a distance of four or five inches. He found that by prying with his crowbar he could raise the pipe, and so advised the foreman. About this time plaintiff had taken his tools, consisting of crowbar, pick, and shovel, to the little toolhouse near by, where they were usually kept, and was about to quit work for the day, it being then six o'clock. The foreman told him that fixing the crane so that engines could be watered was a necessary job, and must be attended to at once, and directed him to get tools and fix it, but without giving him directions as to what tools he should get, or what method he should pursue in doing the work. It is doubtful whether the foreman knew about the balls being off their spindles, for he said, either to Hunt or plaintiff, that he did not know what was the matter with the crane. At any rate, without giving further directions, he left plaintiff, who is described as assistant foreman, to proceed with the help of Hunt and, without further assistance, to put the crane in working order. Plaintiff went to the storehouse near the roundhouse, which was not far away, and asked the keeper for jack screws, which he was unable to get, although it appears in the evidence he might have got jack screws if he had gone to the roundhouse. The conflict in the evidence as to what efforts plaintiff made to get jack screws, and why he did not get them, seems to be immaterial, in view of the fact that he testified that he did not know what use he could have made of jack screws if he had secured them.

Returning to the water crane, plaintiff was told by Hunt that the standpipe could be raised by crowbar, and Hunt, working in the pit, proceeded to raise the pipe some little distance by prying under the lug, but plaintiff found

that the pipe was not thus sufficiently raised to enable him to adjust the balls in the collar. Hunt said that if he had a fulcrum he could raise it higher. Thereupon plaintiff went to the little toolhouse and secured a track chisel about eight inches long, and an inch square, and handed it to Hunt, who said it was just what he wanted, and placing this track chisel under his crowbar, he raised the standpipe higher. When plaintiff had gone to the storehouse he had secured a torch and some waste and oil, and by lighting these the pit and the place above ground where plaintiff was working were sufficiently illuminated so that plaintiff could see what Hunt was doing in the pit, and could also see what was necessary to do in replacing the balls on their sprockets. By means of the track chisel used as a fulcrum for his crowbar, the point of which was put under the lug, Hunt raised the standpipe two or three inches, so that plaintiff could put his hand in between the collar and the standpipe—that is, the projecting rim of the standpipe which was designed to rest upon the balls when in place inside the collar—and adjust the balls on their sprockets. He had adjusted one of them, and was putting another in place, when the crowbar slipped from under the lug, letting the standpipe fall, crushing plaintiff's hand between the projecting portion of the standpipe and the collar. Readjusting his crowbar, Hunt was able to raise the standpipe again so as to release plaintiff's hand, but it had been so crushed that amputation of the middle finger was necessary, and the other fingers are stiff. There is no question as to the hand being permanently disabled.

The negligence of the defendant through its vice-principal, the foreman, relied upon as a basis for recovery by plaintiff, is alleged to have consisted in failing to provide a sufficient number of men and suitable tools and appliances for the work which plaintiff was directed to do, and in failing to warn and instruct plaintiff in relation

to the dangers involved in such work. The grounds on which a directed verdict was asked for defendant by its motion, which was sustained generally, were that no negligence of defendant was shown, that from the evidence it appeared that plaintiff had assumed the risk of doing that which he was attempting to do when injured, and that he failed to show freedom from such negligence contributing to the injury. While plaintiff testified that he was inexperienced and without knowledge as to the construction and operation of water cranes and the method of repairing them, it does appear that he was familiar with the work of bridge building, involving the handling of heavy timbers, and that he was familiar with the use of tools generally employed in railroad work, such as crowbars, picks, and shovels. He also was acquainted with the construction of this water crane, for, a month before the accident, he had assisted in repairing it by putting in some new parts. There was nothing complicated about the mechanism of the water crane, and when plaintiff proceeded to put his hand in between the projecting rim of the standpipe and the surrounding collar, for the purpose of adjusting the balls, he knew perfectly well what he was doing, and could not have been oblivious to the injury which would result to him if the standpipe, which, as he knew, Hunt was holding up by prying with his crowbar under the lug, should fall by reason of the slipping of the crowbar, or otherwise. The operation in which he was engaged involved two elements, the raising of the standpipe, and the continuous support thereof while plaintiff was adjusting the balls to their places. Although plaintiff may not have been familiar with the specific operation of raising and holding up a standpipe, he must have been familiar, in his work as bridge builder, with the raising and holding up of heavy timbers or iron beams used in the construction of bridges, so that persons could work about and under them with safety. There was noth-

ing intricate nor peculiarly dangerous about the raising
of this standpipe. Hunt did raise it by means of a crow-
bar and a track chisel used as a fulcrum. It could have
been safely held in place by putting some wooden blocks
or other supports under the lug after it had been pried up,
or by putting blocks between the projecting rim of the
standpipe and the collar, so that the pipe could not fall
back and crush plaintiff's hand. The precautions to be
taken could be understood without any peculiar knowl-
edge of the mechanism of the water crane, and were such
as would suggest themselves to a person familiar with the
kind of work in which plaintiff had been engaged. Plain-
tiff must have known as well as anyone the danger that
the crowbar employed by Hunt might in his manipulations
slip from the lug under which the point was placed. If
the accident resulted from any negligence of Hunt (al-
though nothing of the kind is suggested in the evidence),
such negligence was that of a co-employe, affording plain-
tiff no right of recovery. If it resulted from the failure
to take proper precautions in supporting the standpipe after
it had been raised so that plaintiff could put his fingers
inside the collar, the necessity of these precautions and
their nature were as apparent to plaintiff as they could
have been to anybody.

We cannot see that there was any necessity for specific
instruction with reference to the dangers involved, nor
can we see how there is any escape from the conclusion
that plaintiff assumed the risk of the method in which he
and Hunt, under his direction, were proceeding to do the
work. No extended discussion of the authorities relating
to the duty to instruct and the assumption of risk seems
to be necessary. In *Anderson v. Illinois Central R. Co.*,
109 Iowa, 524, especially relied on for appellant, the neg-
ligence alleged was in the failing to furnish cant hooks
with which to handle heavy round piles, for the purpose
of rolling them or shifting them from one side to the other

of a car on which they were loaded, and it was held that the employe not familiar with the handling of such piling did not assume the risk involved in moving them by means of an ordinary crowbar. But in the case before us the crowbar in the hands of Hunt was found sufficient to raise the standpipe, and it is not shown that there was any peculiar apparatus generally in use for supporting a standpipe in such position. One witness testified that in subsequently repairing this same standpipe he placed a piece of cedar tie on each side of the pipe, and bolted these two together so that they held the pipe firmly and then by means of jack screws raised the pipe up and supported it while the balls were being replaced. He does not testify that this was the only method in which the work could be done, but only that it was a proper method. But it occurs to us that after all the thing to be accomplished was simply the secure support of the pipe after it was raised, for Hunt did, as a matter of fact, raise it with a crowbar. The cases cited by appellant are those in which there was some peculiar danger in the employment not reasonably apparent to an ordinary employe, or in which the employe was inexperienced as to the work which he was called upon to do. In this case the danger was obvious, and while plaintiff was not experienced in working about water cranes, he had had ample experience in work of the same character as that involved in the task he was attempting to perform.

The lower court did not err in directing a verdict for the defendant, and the judgment is *affirmed.*