JAMES CAHILL, Appellant, v. ILLINOIS CENTRAL RAILROAD
COMPANY, Appellee.

**Railroads:** INJURY TO SECTION MAN : NEGLIGENCE CONNECTED WITH OPER-
1   ATION OF RAILWAY : FELLOW SERVANT RULE.   A gang of section
    men engaged in repairing the track, a part performance of whose
    duty it is to lift their push car from the track to permit the
    passing of an approaching train, are engaged in a service "con-
    nected with the operation of the railway," within the meaning
    of Code, section 2071; and if in removing the push car one of
    the men negligently drops his corner of the car, thus injuring
    another member of the gang assisting in its removal, the fellow
    servant rule will not prevent recovery by the one injured.

**Negligence:** PRESUMPTION.   No presumption of negligence arises
2   from the mere fact that one is injured, but it may arise from
    the nature of the cause or manner of the injury.

**Same:** NEGLIGENCE : EVIDENCE.   In this action for injury to a section
3   foreman while the gang were lifting their push car from the track,
    it appeared that it was the custom for the foreman ordinarily to
    give a word of warning when ready to set the car down, but
    that one of the men let go his hold and dropped his corner of
    the car without warning so to do from anyone, and there was
    no evidence tending to show that his act was not negligent.   *Held,*
    sufficient to present a question of negligence to the jury.

*Appeal from Buchanan District Court.*—HON. FRANKLIN
C. PLATT, Judge.

TUESDAY, MARCH 15, 1910.

ACTION at law to recover damages for a personal injury. There was a directed verdict and judgment for defendant, and plaintiff appeals.—*Reversed.*

*Cook & Cook,* for appellant.

*Kelleher & O'Connor* and *T. J. Fitzpatrick,* for appellee.

WEAVER, J.—The plaintiff was a section foreman in the service of defendant at Winthrop, Iowa. In the work of repairing and mending the railway track he and his gang of three men were supplied with a push car on which tools or materials were transported or moved from place to place. It was their duty to be on the lookout for trains, and in proper time before the arrival of one to remove the push car from the track. On the day in question, plaintiff and his men were in the line of duty, moving their car with their tools and repair material along the track to the eastward, when they discovered the approach of a train and set about the work of clearing the track. The car was furnished with a convenient handle at each of its four corners, and the gang, following the usual method, each laid hold of a handle and, lifting the vehicle, carried it to the north side of the track. The snow at that point was about eighteen inches deep. It was the custom in thus removing the car to let it down at the word or call of the foreman or some other member of the gang when it had been carried to a safe distance from the track. On this occasion, when the car had cleared the north rail but a short distance, and while the plaintiff was carrying the northwest corner, some one of the other three men either purposely or accidently let go his hold, causing plaintiff to fall in such manner that he was struck by the handle or frame of the

car, receiving injuries which disabled him for a year or more. Immediately as he fell, and while still under the car which had fallen on him, one of the men came to his assistance, saying: "I dropped the car 'and didn't mean to. Are you hurt?" This is the case as made by the plaintiff, and, as he was denied the right to go to the jury, we are required to give the testimony the construction most favorable to him.

The single question presented is whether, upon such construction of the record, we can say that a verdict for the plaintiff could be 'upheld. This depends in a degree upon the nature of the service in which he was employed and of the negligence of which he complains. If the negligence (if any there was) can fairly be said to have been "connected with the use and operation of the railroad on or about which he was employed," then he comes within the protection of Code, section 2071, and the fellow-servant rule will not prevent his recovery of damages. The "operation of a railway" includes something more than the transportation of freights and passengers, and the army of employees connected with its "use and operation" includes within its ranks more than those who are engaged in the moving of trains. A very appreciable proportion of the operation of a railway has to do with its maintenance and repair, and especially where such work involves the movement of engines or of cars of various kinds and uses. For instance, the statute has been held to include within its protection the shoveler unloading gravel from a gravel car *(McKnight v. Railroad Co.,* 43 Iowa, 406); the shoveler in the gravel bank loading a car *(Deppe v. Railroad Co.,* 36 Iowa, 52); one engaged in operating a derrick erected on a flat car *(Nelson v. Railroad Co.,* 73 Iowa, 576); clinker man *(Butler v. Railroad Co.,* 87 Iowa, 206); coal handlers while coaling a standing engine *(Akeson v. Railroad,* 106 Iowa, 54); track men distributing rails with the

*1. RAILROADS: injury to sectionman: negligence connected with operation of railway: fellow servant rule.*

aid of an engine and cable *(Williams v. Railroad Co.*, 121 Iowa, 270) ; section men in the use of a hand car *(Mikesell v. Railroad Co.*, 134 Iowa, 736; *Larson v. Railroad Co.*, 91 Iowa, 81) ; construction car moving over a temporary track *(Mace v. Boedker*, 127 Iowa, 721). In the *Larson* case this court cited with approval *Railroad Co. v. Artery*, 137 U. S. 507 (11 Sup. Ct. 129, 34 L. Ed. 747) in which it was held that the use of a hand car by section men was an employment connected with the operation of a railway within the meaning of our statute. See, also, *Smith v. Railroad Co.*, 99 Iowa, 617, and *Frandsen v. Railroad Co.*, 36 Iowa, 372.

It is generally held by all courts where statutes similar to our Code, section 2071, have been enacted, that the provision is intended for the benefit of those railway employees, no matter in what department of service, whose duty for the time being exposes them to the dangers and hazards peculiar to the operation of railways. And surely when a man, in pursuance of his employment, rides or pushes or manages a hand car along the rails to transport tools or material or men, his service is as certainly "connected with the operation of a railway" as is the man who handles the throttle upon an engine which pulls or pushes a car loaded with gravel or other road building material. So, also, the danger to which the section hand is exposed in moving his car along the track from the approach of trains having the right of way is danger peculiar to railroading, and as his duty requires him, under such circumstances, to remove his car from the rails until the train has passed, and then to replace it and proceed, such service never ceases to be connected with the operation of the railroad, and, so far as any danger attends such service, it must be classed with the hazards of railroad operation. If the railway company should provide side tracks and switches for the benefit of sectionmen and their hand cars, their work in taking to such side tracks for the passing of

trains would be so obviously connected with the operation of the railway that few would think of questioning it; and when the company obviates the necessity of side tracks and switches for such use by furnishing a car which the men can carry, and requires them to do their "switching" by lifting it bodily from the rails and replacing it when the danger has passed, we are very clear that in so doing they are still assisting in the operation of the road. This conclusion finds support in cases from other states as well as our own. *Hardt v. Railroad Co.*, 130 Wis. 512 (110 N. W. 427); *Steffenson v. Railroad Co.*, 45 Minn. 355 (47 N. W. 1068, 11 L. R. A. 271).

There is nothing in *Dunn v. Railroad Co.*, 130 Iowa, 580, inconsistent with the view here expressed. In that case no question of the use of a hand car arose. The only inquiry there was whether the injury caused by a passing engine striking an iron bar negligently left on the track and hurling it against a section hand standing on the right of way was of the class covered by Code, section 2071, and a majority of this court held that it was not. Until the majority recedes from that holding, it remains the law of this state for cases of that kind; but neither in fact or principle is the case at bar within the rule of that precedent. In this connection we may as well refer also to the case of *Andrews v. Railroad Co.*, 129 Iowa, 162, which is cited by appellee as having an important bearing on the questions presented by the present appeal. In that case plaintiff was injured by the falling or dropping of a hand car which he and others were carrying. No negligence was charged against the fellow workman who dropped the car, nor was the question raised whether in carrying the car they were engaged in the operation of a railroad within the meaning of our statute. The negligence alleged was the act or omission of the foreman in permitting the coming train to get too near before clearing the track, whereby the work had to be done in such a hurry that it

caused one of the men to stumble and lose his hold on the car. We held that there was no sufficient showing that the delay by the foreman was the proximate cause of the injury. The decision has little, if any, bearing upon the issue now under consideration.

We turn now to the question whether there was any evidence upon which the jury could find that there was negligence on the part of plaintiff's fellow workman in 2. NEGLIGENCE: dropping the car without warning. Counsel
presumption. for appellee say that no presumption of negligence arises from the mere happening of an accident. A better statement of the rule is that no presumption of negligence arises from the mere fact of injury to the plaintiff. Such presumption may and often does arise from the nature of the cause or manner of the injury. For instance, the mere fact that a trainman is injured while engaged in the line of his duty will not justify an inference of negligence on the part of his employer; but, if it appear that the injury was received in a collision between two trains of the same company moving in opposite directions on the same track, an inference of negligence does arise. The fact that a workman in a mine or quarry suffers injury from the explosion of a blast will not alone entitle him to recover damages from his master; but if it further appear that he was entitled to a warning and opportunity to escape before the blast was fired, and that no warning was given, a very different rule prevails. There may have been no negligence in either case. In the one, control of an engine may have been lost from causes against which reasonable care could not have provided, and, in the other, the blast may have been prematurely ignited without fault of any one; but the injured party suing for damages has never been held to negative all such possible explanations. As is said in *Railroad Co. v. Webb,* 12 Ohio St. 475: "In proving the injury, the plaintiff . . . may and often does prove such circumstances, under which the injury was

received, as raise a presumption of carelessness . or negli-
gence, and in such case the burden of disproving the pre-
sumption by explaining the circumstances so as to render
their existence consistent with the absence of any negligence
would devolve upon the defendant." This rule has been
applied to cases where a railway switch has been found
open, *Railroad Co. v. Johnson,* 23 Tex. Civ. App. 160 (55
S. W. 772); where a car escapes and runs wild, *Coal, Iron
& Ry. Co. v. Hayes,* 97 Ala. 201 (12 South. 98); where
a stone is being lifted over a workman and it falls upon
him, *Smith v. Baker* (65 L. T. N. S. 467); where a
girder falls from a building in the course of construction,
*Wight v. Poczekai,* 130 Ill. 139 (22 N. E. 543); where
a bucket used in hoisting coal is prematurely tripped,
*Cummings v. Furnace Co.,* 60 Wis. 603 (18 N. W. 742,
20 N. W. 665); where a steel rail was thrown from a pile
without warning to those below, *Railroad Co. v. Koehler,*
37 Kan. 463 (15 Pac. 567); where a piece of timber was
being handled by fellow servants, one of whom turned the
stick prematurely to the injury of another, *Railroad Co. v.
Brassfield,* 51 Kan. 167 (32 Pac. 814); where section
hands were carrying a heavy steel rail, and one of them
suddenly let go his hold causing injury to his fellow work-
man, *Blomquist v. Railroad Co.,* 65 Minn. 69 (67 N. W.
804). Many others of similar nature might be cited.

In the case at bar the evidence tended to show that,
in lifting the car from the track, it was the custom of the
gang to give a word of warning when ready to set it down.

3. SAME:
negligence:
evidence.

The plaintiff was foreman, and the one from
whom the word would naturally be expected,
though under the evidence it might perhaps
be given by any one of the gang. The foreman was at the
northwest corner substantially in the direction the car
was being carried. He was faced away from the car with
the handle lifted about his hip and somewhat behind him.
The man Penny was at the southwest corner, and it was

he as plaintiff testifies, who let go his hold or dropped the car; no word of warning having been given by any one. These facts are, in our opinion, sufficient to make the question of due care on the part of Penny one for the consideration of the jury. The fact that he dropped his corner of the car and did it without warning is shown. There is nothing, except his exclamation or statement to which we shall soon refer, to show that his act was not voluntary or due to his carelessness. Such being the case and no explanation or denial appearing, the jury could rightfully find, if indeed it was not bound to presume, that the act was a voluntary one, or one of pure heedlessness.

Does the statement made by Penny: "I dropped the car. I didn't mean to. Have I hurt you?"—introduce any element into the case which obviates the result above indicated? We think not. Independent of this statement, there is evidence that he is the one who dropped the car, and the effect of that proof is not neutralized by his declaration that he did not mean to do it. But even conceding the literal truth, it is not inconsistent with his alleged negligence. Counsel is not correct in the assumption that, if an act is inadvertent, it is therefore not negligent, for, generally speaking, the very essence of negligence is inadvertence. Only the malignant or vicious intend injury to others, and such intentional injury is willful, but not negligent in the proper sense of the word. Were there any evidence here that Penny lost his hold by reason of slipping or stumbling, or other cause consistent with due care on his part, the cases of *Bolsem v. Railroad Co.*, 140 Iowa, 73, and *Tibbets v. Railroad Co.*, 138 Iowa, 178, and and other precedents of that class cited by appellee would be pertinent; but the record discloses nothing except that Penny, whose duty it was to hold up his corner until the word was given, dropped it. Presumptively such act was voluntary, and, being a violation of the duty which he owed to others engaged in lifting the car, it was negligent. His

statement after the injury that he "did not mean to" may have been and probably was, competent evidence as a part of the *res gestae;* but it would be going entirely too far to say it was conclusive of the question of his due care.

For the reasons stated, it was error to direct a verdict, and the judgment appealed from is therefore *reversed.*