MILLER, Administratrix, etc., Appellant, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*January 14 — February 1, 1887.*

*Railroads: Negligence: Presumption: Nonsuit.*

The evidence in this case — showing that the plaintiff, while standing on a side track of the defendant's railway in front of a car loaded with lumber belonging to him, which had been left there to be unloaded, was run over and killed by such car, which was struck and set in motion by other cars which had been standing on the same track, but not showing what force set the other cars in motion, what the grade of the side track was, the customary manner in which such track had theretofore been used, or that any employee of the defendant was about such side track when the accident happened or before — is *held* not to raise a sufficient presumption of negligence on the part of the defendant to require the submission of that question to the jury.

Miller, Adm'x, etc. vs. The Chicago, Milwaukee & St. Paul R. Co.

APPEAL from the County Court of *Dodge* County.

On May 7, 1884, the plaintiff's intestate was run over by a car on the railway of the defendant company, at Horicon, and killed. This action was brought by his widow, who had been theretofore duly appointed administratrix of his estate, to recover damages therefor. The complaint alleges that the death of the intestate was caused by the negligence of the defendant company. The answer denies the negligence charged, and alleges that the deceased came to his death through his own negligence.

On the trial, after the plaintiff had introduced her proofs and rested her case, the court ordered a nonsuit, and judgment for the defendant was accordingly entered, dismissing the complaint with costs. The plaintiff appeals from such judgment.

A sufficient statement of the testimony will be found in the opinion.

For the appellant there were briefs by *Jenkins, Winkler, Fish & Smith,* and oral argument by *Mr. Winkler.* They contended, *inter alia,* that the deceased had a right to be about the car upon any reasonable errand connected with his property upon the car. He had a right to expect that if it became necessary to move the car it would not be done without some signal or warning to persons who might reasonably be expected to be about it, and there can be no question that the defendant ought to have anticipated that the deceased was likely to be about the car for some purpose connected with his property upon it. The car stood on the edge of the highway, and for that reason alone the deceased had a right to assume that it would not be pushed into or across the highway without warning. See *McKone v. Mich. Cent. R. Co.* 51 Mich. 601; *Watson v. W., St. L. & P. R. Co.* 66 Iowa, 164; *Ill. Cent. R. Co. v. Shultz,* 64 Ill. 172; *Holmes v. N. E. R. Co.* L. R. 4 Exch. 254; *Doss v. M., K. & T. R. Co.* 59 Mo. 27.

For the respondent there was a brief signed by *John W. Cary*, attorney, and *Burton Hanson* and *F. W. Downer, Jr.*, of counsel, and the cause was argued orally by *Mr. Hanson*. They argued, among other things, that there was a complete failure of proof as to the material allegations of the complaint. The presumption is that the defendant was free from negligence, and though a general allegation of negligence may be sufficient in a complaint, the plaintiff must show upon the trial some definite act or omission on the part of the defendant upon which he bases his right to recover. *Daniel v. Metropolitan Railway*, L. R. 3 C. P. 591; *Higgs v. Maynard*, 14 L. T. (N. S.), 332; *Toomey v. L., B. & S. C. R. Co.* 3 C. B. (N. S.), 146; *Wood v. C., M. & St. P. R. Co.* 51 Wis. 196; *Cahill v. Layton*, 57 id. 600; *Lockwood v. C. & N. W. R. Co.* 55 id. 50; *Stevenson v. C. & A. R. Co.* 5 McCrary, 634; *Kendall v. Boston*, 118 Mass. 234; *Bremmer v. G. B., St. P. & N. R. Co.* 61 Wis. 114; *Denby v. Willer*, 59 id. 240; *Sorenson v. Menasha P. & P. Co.* 56 id. 338; *Steffen v. C. & N. W. R. Co.* 46 id. 259; *Abbott v. Freeman*, 35 L. T. (N. S.), 783; *State v. B. & O. R. Co.* 58 Md. 221; *P., W. & B. R. Co. v. Stebbing*, 62 id. 504; *Phil. & R. R. Co. v. Schertle*, 97 Pa. St. 450, 455.

LYON, J. One of the railroads of the defendant company from Milwaukee to Portage city runs nearly west through the village of Horicon, and is intersected at that place by what is known as the Berlin Branch, another railroad of the defendant, which enters Horicon from the northwest. South of the main track of the Portage Branch in such village are two side tracks, which connect with the main track at both ends. These side tracks are parallel to each other, and appear by a map in evidence to be each about 1,200 feet in length. About 300 feet west of the east end of these side tracks a traveled road crosses all of the railroad tracks from northeast to southwest. . Immediately

west of this road, and south of the south side track, the plaintiff's intestate, Charles J. Miller, had a lumber yard, and occupied therewith about 250 feet of ground along the side track. He had carried on business there for several years. It does not appear how the remaining land along the south side track was occupied, except there was a coal-shed south of it, directly east of such traveled road, but by whom it was used does not appear. Neither does it appear how, or for what purposes, or by whom, such south track was ordinarily used, except it was used for the purposes of the lumber business of the deceased.

May 7, 1884, a car loaded with lumber belonging to the deceased was detached from a freight train and left on the south side track at a point some twenty or thirty feet west of the road crossing before mentioned, to be unloaded. The deceased directed where it should be left. The lumber was piled on this car four or five feet-high. We infer that it was an open or platform car and was left there during the forenoon or early in the afternoon, although there is no direct testimony on these subjects. Afterwards, on the same day, a man named Winnefeld met the deceased at the coal-house above mentioned, and they had a conversation about the car-load of lumber. Winnefeld thought it was all fence lumber, and doubted whether there would be much demand for it. The deceased said that it contained other kinds of lumber, and they walked over to the car (which was four or five rods from them) and examined the lumber. They went round the car and stopped at the east end of it between the rails of the track, close to the car and facing it, where they continued their conversation about the fence lumber. While thus engaged, the lumber car was suddenly struck from the west with sufficient force to move it east on the track to the coal-shed, and it threw Miller over backwards, ran over him, and so injured him that he died during the same afternoon. It appears that

two or three flat cars were standing upon the same track (but at what distance from the lumber car does not appear), and that they ran down the track east, the foremost one striking the lumber car and thus causing the death of Miller.

The only witness on the trial who gave testimony of any importance as to the cause of the death of Miller was this man Winnefeld. His testimony gives us no information on many points bearing directly on the merits of the case, which it would seem might easily have been supplied by him or other witnesses. The accident happened in the daytime, on the depot grounds of an important station, being at the junction of two lines of railway and in a considerable village, and it seems incredible that testimony of all the material circumstances connected with the disaster could not readily have been obtained. Yet the testimony does not inform us what force set the flat cars in motion, which was the primary cause of Miller's death, nor how long those cars had stood upon the track. There is no testimony showing, or tending to show, that any engine had been upon the track during that day, or had thrown cars upon it from the main track, thus driving the flat cars upon the lumber car. Indeed, the testimony of Winnefeld tends rather to show that nothing of the kind occurred. Neither is there any testimony that any employee of the defendant company was about that south side track, or doing anything on or about it, when the accident happened or before. On the contrary, Winnefeld testifies that he saw no one there. Neither are we informed of the grade of the track, which may be important in determining the force with which the lumber car was struck. It has already been said that there is no testimony of the customary manner in which the south side track had been theretofore used. These might be important elements in determining the question of negligence, whether of the deceased or of the railway company.

Winnefeld testifies, however, that, by reason of an en-

gine on another track blowing off steam, he could not have heard any signal of approaching cars, had one been given before the lumber car was struck; and, further, that when the deceased stepped behind the car he did not look to the other end. Of course, had he done so, he would have seen the cars moving towards him on the track, had they been in motion when he took up his perilous position.

It will be observed that the testimony leaves us almost entirely in the dark as to the proximate cause of the death of Miller. It informs us that a force was applied to the flat cars, which resulted in moving the lumber car upon him, causing his death. That is substantially all the direct evidence we have on the subject.

It is maintained, on behalf of the plaintiff, that this testimony, viewed in the light of the surrounding circumstances, raised a sufficient presumption that the death of Miller was caused by the negligence of the defendant company to send the question of such negligence to the jury. The basis of this proposition is the rule laid down in *Scott v. London & St. K. Docks Co.* 3 Hurl. & C. 596; and adopted by this court in *Cummings v. Nat. Furnace Co.* 60 Wis. 603, and other cases. The rule is thus stated: " In an action for personal injury caused by the alleged negligence of the defendant, the plaintiff must adduce reasonable evidence of negligence to warrant the judge in leaving the case to the jury; but when the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

Under this rule it is claimed that from the facts proved, as above stated, the court must presume (1) that the defendant threw cars upon the side track, which moved the cars standing thereon and thus caused the death of Miller;

and (2) that it did so negligently. We think the rule admits of no such application. In the first place, no case should be determined upon a mere presumption of fact when direct and positive evidence of the fact can readily be obtained. In this case, if cars were thrown or pushed upon the side track several men were engaged in the act, and the plaintiff might easily have ascertained who they were. Besides, in all reasonable probability, other persons, readily ascertainable, saw the act; and the sad result of it would have impressed what they saw upon their minds. Again, the tendency of the testimony is against the inference that the defendant's employees threw cars upon the track, or used it at all, after the lumber car was placed upon it. The inference that they did so must rest entirely upon the assumption that there was no other adequate power existing there to produce the result. How can we know this from the meager and unsatisfactory evidence in the case? It is quite manifest that the brakes were not set on any of the cars standing on the side track; and, if the grade is a little descending to the east, it is just as reasonable to presume that the flat cars were started by some other agency, and gained sufficient momentum on such descending grade to move the lumber car a few rods. We do not think any such presumption can properly be indulged in; but it is just as reasonable as the presumptions contended for by the plaintiff, upon which her right of action depends.

But were we to presume that the cars were put in motion by the employees of the company, as claimed, the further presumption of negligence on their part would not necessarily follow. There is nothing in the evidence to support it,— no proof of any fact which raises the inference of negligence on their part. The defendant had a right to use that side track in the course of its business; and if, in so using such track, it was necessary or convenient to move

the lumber car, the company might lawfully do so, return-ing it to its designated place within a reasonable time there-after.    There is nothing in the testimony tending to show that the cars were thrown upon the track with more force than was necessary to accomplish the intended purpose of placing them there.    The fact that the cars standing upon the track were thereby moved a short distance does not tend to show negligence.    Neither is there any foundation in the proofs for the inference that there was any failure in the use of all necessary precautions to avoid accident.    A sentinel on the flat cars could not have known that the de-ceased was standing behind and facing the lumber car, entirely hidden from view; nor could he have been seen by a person standing at the side of the track and looking down it from the west.    There is also an entire absence of testi-mony as to whether signals were given from the train which we are now presuming, without proof, was being operated on the side track.

We conclude, therefore, that this is not a case in which " the thing is shown to be under the management of the de-fendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care;" and hence that there is no presumption that the defendant's employees were negligent.    There is no proof that such employees were managing and using the side track and cars thereon when Miller was killed; and, if they were, there is no proof that they managed or used the same negligently.    The accident, under the circumstances proved, was entirely consistent with the exercise by them of reasonable and proper care.    There being no testimony in the case tending to show negligence on the part of the defendant or its employees, the court properly nonsuited the plaintiff.

We also incline to the opinion that negligence by the de-ceased, contributing directly to his death, was conclusively

proved, and that the nonsuit may be upheld on that ground. It is not necessary, however, to discuss or definitely determine this proposition.

*By the Court.*— The judgment of the county court is affirmed.